## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GAYSHA GLOVER, and
COURTNEY GRIFFIN, individually
and on behalf of the ESTATE OF
D'ETTRICK GRIFFIN,

     *Plaintiffs,*

*v.*

CITY OF ATLANTA; ERIKA
SHIELDS; OLIVER SIMMONDS,
and DOES 1–5,

     *Defendants.*

CIVIL ACTION FILE
NO. 1:20-CV-04302-SDG

---

## DEFENDANTS CITY OF ATLANTA AND ERIKA SHIELDS' BRIEF IN SUPPORT OF MOTION TO DISMISS

COME NOW, **CITY OF ATLANTA** and **ERIKA SHIELDS**, individually and in her official capacity, Defendants in the above-captioned matter, and file this Brief in Support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1), and -(6).

## I.    INTRODUCTION

This is a civil rights action brought under 42 U.S.C. § 1983 against the City of Atlanta ("the City"), former Chief of Police Erika Shields, Officer Oliver Simmonds, and five unnamed individuals. Plaintiffs Gaysha Glover and Courtney Griffin filed the action individually and on behalf of their decedent,

D'Ettrick Griffin. The action arises out of an attempted car theft that occurred on January 15, 2019 when D'Ettrick Griffin attempted to steal Officer Simmonds' police vehicle while Simmonds was refueling the vehicle at a gas station near the intersection of Whitehall and McDaniel Street in Atlanta. Griffin was shot by Officer Simmonds while trying to steal the vehicle before ultimately crashing the vehicle into a third-party's vehicle moments later. Griffin died in the incident, and Plaintiffs seek to recover for his death.

Plaintiffs assert claims under the Fourth and Fourteenth Amendments to the U.S. Constitution as well as state law claims. Specifically, they assert a § 1983 supervisory liability claim against Shields based on her management and oversight of the Atlanta Police Department and a Monell claim against the City. Plaintiffs also assert a state law claim against the City to enforce Georgia's Open Records Act, O.C.G.A. § 50-18-70, *et seq*. For the following reasons, however, the Court should dismiss the claims against Shields and the City (and the unnamed John Does).

*First*, fictious-party pleading is not permitted in federal court, and thus, the claims against "Does 1–5" are improper.

*Second*, Plaintiffs have not plausibly alleged a supervisory liability claim against Shields because they have not alleged sufficient facts that would demonstrate how Shields *caused* Griffin to suffer a constitutional violation. And even if they had, Plaintiffs have not overcome Shields's entitlement to

qualified immunity. Additionally, the official capacity claim Plaintiffs assert against Shields is redundant of their <u>Monell</u> claim and should be dismissed.

*Third*, Plaintiffs' <u>Monell</u> claim against the City fails for reasons similar to the supervisory liability claim against Shields. Respondeat superior liability is inapplicable to supervisory liability and municipal liability under § 1983, yet Plaintiffs do not allege anything more than that.

Finally, the Court lacks subject matter jurisdiction over Plaintiffs' Open Records Act claim against the City. This claim does not arise out of a common nucleus of operative facts with Plaintiffs' federal law claims, and thus, the Court lacks supplemental jurisdiction over this claim.

Therefore, for the reasons described more fully below, Defendants City of Atlanta and Erika Shields's Motion to Dismiss should be GRANTED.

## II.    ALLEGATIONS IN THE COMPLAINT

### A.    The Parties

Plaintiffs Gaysha Glover and Courtney Griffin are the parents of D'Ettrick Griffin and the co-administrators of his estate. [Complaint, Doc. 1, at ¶¶ 195–197]. They assert claims individually and on behalf of Griffin's estate.

Defendants are: (1) the City of Atlanta, (2) Erika Shields, (3) Oliver Simmonds, and (4) a group of five unnamed individuals identified as "Does 1–5." [Complaint, Doc. 1, at ¶¶ 198–201]. Erika Shields was the Chief of Police

for the Atlanta Police Department ("APD") at the time of the incident. [See id., at ¶¶ 153, 199]. Oliver Simmonds is an APD officer and was a member of Mayor Keisha Lance Bottoms' Executive Protection Unit ("EPU") at the time of the incident. [Id., at ¶ 200]. "Does 1–5" are described as various supervisory officials within APD. [Id., at ¶ 201].

**B.   The Incident**

The underlying incident for which Plaintiffs seek to recover for involves Griffin's attempted theft of Simmonds' EPU vehicle and Griffin's resulting death during his commission of the felony. [Cf. id., at ¶¶ 8, 14]. To this end, Plaintiffs allege that on January 15, 2019, Officer Oliver Simmonds "parked his unmarked APD police car at a gas station located at the intersection of Whitehall and McDaniel Street in Atlanta." [Id., at ¶ 6]. Simmonds was at the gas station to refuel on gas (unsurprisingly), as the incident reports—which Plaintiffs have incorporated into their Complaint—note. [See id., Doc. 1, at ¶ 31]. While Simmonds was outside of the vehicle filing the tank, Griffin entered the vehicle and began to "peacefully" drive the stolen police vehicle away. [Id., at ¶¶ 8, 224].

Plaintiffs *allege* that Griffin posed no threat to Simmonds or any other citizens while he was committing the felony that day, [See id., at ¶¶ 11–12], which (of course) must be accepted as true for purposes of this Motion, and that Simmonds shot him in the back without any "possible explanation" after

Griffin had "peacefully" departed from the gas station parking lot in the stolen vehicle. [Id., ¶¶ 14–17]. Yet, Plaintiffs do not dispute the veracity of the incident reports that they have incorporated into their Complaint, which note that "an altercation broke off between [Simmonds] and [Griffin] which led to [Griffin] speeding off at a high rate of speed West bound on Whitehall St." [See id., at ¶ 31].[1]

Griffin did not travel very far from the gas station parking lot after being wounded by the gunshot. He lost control of the police vehicle and wrecked it into "two other vehicles," which caused "serious injuries to a bystander." [Id., at ¶¶ 22–23]. Griffin was later pronounced dead at the scene once "additional APD officers" arrived and the scene had been secured. [See id., at ¶ 25].

## C.   Plaintiffs' Allegations of a Supposed "Cover-Up"

Despite alleging that "a homicide investigation is pending with the Fulton County District Attorney," Plaintiffs go on to accuse the City of conducting an elaborate "cover-up" by committing multiple violations of Georgia's Open Records Act. [Id., at ¶¶ 26, 36–51]. Plaintiffs acknowledge, however, that City officials eventually responded to Plaintiffs' records

---

[1]   Indeed, Plaintiffs only take issue with the fact that the reporting officers did not "mention" in the reports that Simmonds "shot [Griffin,] an 18 year-old boy[,] in the back and killed him." [Complaint, Doc. 1, at ¶ 31]. Presumably, this detail is not included because the reports Plaintiffs incorporate are mere traffic accident reports that were completed as a result of Griffin crashing the car into another car.

requests, released the initial incident reports, and that the City informed Plaintiffs that these were the only documents that "could [be] release[d] at th[e] time" of their requests. [Id., at ¶ 43]. Thus, all that can plausibly be inferred, based on Plaintiffs' own allegations, is that the other requested documents were not yet subject to disclosure—not that some malevolent "cover-up" occurred. See O.C.G.A. § 50-18-72(a)(4) (excepting from disclosure under Open Records Act any records "of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution . . . other than initial police arrest reports and initial incident reports").

**D.   Plaintiffs Extraneous, Impertinent Allegations**

Plaintiffs' Complaint also contains nearly 150 additional paragraphs, which are largely filled with extraneous, impertinent factual allegations. [See id., at ¶¶ 52–194]. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Plaintiffs litter their Complaint with these spurious allegations presumably in an effort to prejudice the Court or to garner media attention. For example, their allegations relating to the "pre-litigation posture" of the case, Plaintiffs' dissertation as to irrelevant, alleged misconduct by former city officials, as well as their allegations regarding alleged, improper use of the EPU serve no legitimate purpose in the Complaint. [See, e.g., id., at ¶¶ 52–55, 69–75, 79–84]. Plaintiffs also cite numerous news articles from the Atlanta

Journal-Constitution and other local newspapers and purport to describe other *unrelated* alleged, excessive force incidents. [See, e.g., id., at ¶ 123]. One can only speculate why Plaintiffs have taken this spaghetti approach to paint the APD in a bad light. But, for only a couple of the incidents do Plaintiffs *actually allege* that a constitutional violation ever occurred. [See, e.g., id., at ¶¶ 115–22, 136–140]. And for the five incidents involving APD officers firing into a vehicle, which are *arguably* similar to the underlying incident (though Defendants do not concede so), Plaintiffs acknowledge that the officers were terminated, prosecuted, or both. [See id., at ¶¶ 171–72, 177, 188].

### III.   MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' Complaint must contain sufficient factual material, accepted as true, such that it states a claim "'that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires allegations specific enough "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, Plaintiffs must allege factual content which allows the Court to draw a reasonable inference that Defendants are liable for the misconduct alleged; this does not mean, however, that Plaintiffs may plead facts that are merely "consistent" with liability. Iqbal, 556 U.S. at 678.

When confronted with a Rule 12(b)(6) motion, the Supreme Court has instructed that lower courts to adopt a "'two-pronged approach.'" <u>American Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (quoting <u>Iqbal</u>, 556 U.S. at 679). First, eliminate any allegations that are merely conclusory since legal conclusions, generic labels, and unadorned recitations of the elements of a cause of action are not entitled to any presumption of truth. Second, the Court must take the well-pleaded factual allegations, assume their truth, and determine whether they plausibly give rise to a right to relief. <u>Id.</u> Although the Court must "make reasonable inferences" in Plaintiffs' favor, the Court is "not required to draw" their inferences for them. <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citation and quotation omitted), abrogated on other grounds by <u>Mohamad v. Palestinian Auth.</u>, 566 U.S. 449, (2012).

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The supervisory liability claims against the John Doe Defendants should be dismissed because Plaintiffs cannot plead fictitious parties.

In Count III of their Complaint, Plaintiffs allege supervisory liability claims against five unnamed individuals who are identified as "Does 1-5." [Complaint, at ¶ 201, *see id.* at ¶ 235]. But "fictitious-party pleading is not permitted in federal court." <u>Richardson v. Johnson</u>, 598 F.3d 734, 738 (11th Cir. 2010). And while there is a very "limited exception to this rule," Plaintiffs do not satisfy the exception here because they have not described who the John

8

Does are in "so specific" terms that the use of the "John Doe" labels would be "'at the very worst, surplusage.'" <u>Id.</u> (quoting <u>Dean v. Barber</u>, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).

Plaintiffs' descriptions of "Does 1-5" are no different than the descriptions deemed deficient in <u>Gibbons v. McBride</u>, 124 F.Supp. 3d 1242, 1358 (S.D. Ga. 2015). <u>See id.</u> (dismissing "John Doe" defendants in § 1983 case alleging supervisory liability claims against fictitious supervisory officials). There, the plaintiff described the John Does by merely alleging that the Does had been "delegated supervisory authority," had "caused [plaintiff]'s obstruction charge," had been "aware of certain facts and 'engaged in conspiratorial activity," and had "caused a criminal prosecution"—similar to what Plaintiffs allege here. [<u>Compare</u> Complaint, at ¶ 201]. Finding these "bare descriptions and conclusory allegations" deficient, the <u>Gibbons</u> court dismissed the John Does. <u>Id.</u> at 1358. And the Court should do the same here.

## B. Plaintiffs' supervisory liability claim against Shields should be dismissed on account of qualified immunity.

Also, in Count III of the Complaint, Plaintiffs assert an omnibus claim against Shields, alleging various theories of supervisory liability. [Complaint, at ¶ 235(a)–(e)]. But this claim fails under both steps of the qualified immunity analysis. <u>See</u> <u>Gates v. Khokar</u>, 884 F.3d 1290, 1296 (11th Cir. 2018) (explaining two-step analysis). Plaintiffs do not adequately allege a supervisory liability

9

claim against Shields, and even if they had, they do not allege a violation of clearly established law. Shields was clearly acting "within the scope of [her] discretionary authority" under the allegations in Plaintiffs' Complaint. See id. Therefore, Plaintiffs bear the burden of establishing "that qualified immunity is not appropriate," which they fail to do. See id. (granting motion to dismiss on account of qualified immunity).

## 1. Shields was acting within the scope of her discretionary authority.

For qualified immunity to apply, an official must first establish that she was acting within the scope of her discretionary authority. Gates, 884 F.3d at 1296 ("A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority."). This analysis is "two-fold" and essentially entails asking whether the alleged "acts in question . . . are of a type that fell within the employee's job responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). In conducting the analysis, the court asks "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize." Id. The inquiry is not, however, "whether it was within the defendant's authority to commit the allegedly illegal act," since if it were "[f]ramed that way, the inquiry is no more than an untenable tautology." Id. Thus, the court "look[s] at

the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id.

Based on the allegations in their Complaint, Plaintiffs cannot credibly argue that Shields was *not* acting within the scope of her discretionary authority. Indeed, Plaintiffs acknowledge as much when they alleged that Shields "was, at all relevant times," "responsible for" overseeing "(1) the policies, practices, customs, and regulations of the City of Atlanta Police Department and (2) the hiring, training, supervision, and discipline of the Atlanta Police Department's employees, including its officers." [Complaint, at ¶ 199 (emphasis added)]. Thus, Plaintiffs explicitly allege that Shields was performing her oversight functions of the police department, which "are legitimate functions of running a police force and are well with the Chief of Police's power." Duke v. Hamil, 997 F. Supp. 2d 1291, 1298–99 (N.D. Ga. 2014) (granting motion to dismiss after finding chief of police acting within discretionary authority and entitled to qualified immunity). Just as the Gibbons court observed, allegations against supervisory officials—like the type Plaintiffs allege here—undoubtedly reach a supervisory official's discretionary authority under the Eleventh Circuit's analysis. 124 F. Supp. 3d at 1239 (citing cases from around the Eleventh Circuit).

**2.      Plaintiffs do not plausibly allege that Shields herself committed a constitutional violation.**

Since Shields was clearly acting within her discretionary authority, the burden shifts to Plaintiffs to "establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was not clearly established at the time of the alleged misconduct." Gates, 884 F.3d at 1297. And under the first prong of the qualified immunity analysis, Plaintiffs bear a heavy burden as it relates to their supervisory liability claim. See Keith v. DeKalb County, 749 F.3d 1034, 1048 (11th Cir. 2014) ("In short, 'the standard by which a supervisor is held liable in [her] individual capacity for the actions of a subordinate is *extremely rigorous*.") (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (emphasis added); see Piazza v. Jefferson County, 923 F.3d 947 (11th Cir. 2019) (reversing denial of motion to dismiss supervisory liability claims).

This is so because "vicarious liability is inapplicable to . . . § 1983 suits." Iqbal, 556 U.S. at 676. Yet, Plaintiffs overlook this important distinction in their Complaint. It is not enough that they allege Officer Simmonds violated Griffin's constitutional rights. Supervisory officials like Shields "are not liable under § 1983 for the unconstitutional acts of their subordinates." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation omitted), abrogated on

other grounds by <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). And thus, for a supervisory liability claim to survive dismissal, "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676 (dismissing supervisory liability claims under Rule 12(b)(6)) (emphasis added).

To this end, there are *only* two sets of circumstances in which supervisory officials can be held liable: (1) where they *personally participated* in the underling constitutional violation, or (2) where they *caused* the constitutional violation to occur based on their own conduct. <u>Cottone</u>, 326 F.3d at 1360. Here, Plaintiffs do not allege that Shields personally participated in the underlying constitutional violation. Thus, Plaintiffs' claim against Shields may only proceed if they have plausibly alleged that Shields herself *caused* a constitutional violation to occur.

There are multiple standards for establishing that a supervisor's own conduct caused the constitutional violation to occur. <u>See</u> <u>Cottone</u>, 326 F.3d at 1360. But Plaintiffs' allegations do not satisfy any available standard with the requisite plausibility. <u>See</u> <u>Iqbal</u>, 556 U.S. at 683 ("[R]espondent's complaint does not contain any factual allegations sufficient to plausibly suggest [supervisors'] discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.").

First, Plaintiffs do not allege that Shields either "directed [Officer Simmonds] to act unlawfully or knew that [he] would . . . and failed to stop him from doing so." Mercado v. City of Orlando, 407 F.3d 1152, 1158 (11th Cir. 2005) (quoting Gonzales v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003)). There are no allegations that Shields explicitly directed Officer Simmonds's alleged unlawful conduct. See Gonzales, 325 F.3d at 1235–36 ("Plaintiffs do not allege that [the supervisors] directed the agents on the scene to spray the house with gas, break down the door with battering rams, point guns at the occupants, or damage property."). And Plaintiffs do not plausibly allege that Shields knew Officer Simmonds would act unlawfully and failed to stop him. See Mercado, 407 F.3d at 1158.

Plaintiffs *only allege* that Shields was "aware of Officer Simmonds' arrest for domestic abuse in 2012" and that she had "actual knowledge of Officer Simmonds' anger issues and violent behavior." [Complaint, at ¶¶ 238–39]. But these allegations are not sufficient because Plaintiffs must allege that Shields had actual knowledge that Officers Simmonds would engage in the *particular* misconduct at issue. See id. (holding supervisory liability claim based on "failure to stop" standard failed as a matter of law since there was no evidence that supervisor could be charged with having known that subordinate would commit the *particular* misconduct).

14

Second, Plaintiffs do not plausibly allege that Shields enacted (or failed to enact) a policy or custom that caused Griffin's death and which evidenced Shields's deliberate indifference to his constitutional rights. See Cottone, 326 F.3d at 1360 ("Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights[.]") (citation and punctuation omitted); Piazza, 923 F.3d at 957 ("A plaintiff can also show that the *absence* of a policy led to a violation of constitutional rights."). Plaintiffs do not point to any particular, allegedly unconstitutional policy that Shields enacted which led to Griffin's death. See Cottone, 326 F.3d at 1362 ("The plaintiffs do not allege any affirmative custom or policy implemented by the supervisory defendants that played a role in Cottone's death.").[2] Rather, Plaintiffs have only attempted to demonstrate that

---

[2] Although Plaintiffs do identify "APD's vehicle pursuit policy" prior to this incident (which they suggest was changed as a result of the incident), [See Complaint, at ¶¶ 190–94, 254], they do not plausibly allege that this "facially constitutional policy" evidenced deliberate indifference to Griffin's constitutional rights. See Goebert v. Lee County, 510 F.3d 1312, 1332 (11th Cir. 2007) ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations."). Nor do they plausibly allege what about this policy supposedly caused Griffin's death. See Piazza, 923 F.3d at 958 ("Hunter's complaint contains only conclusory assertions that jail officers were deliberately indifferent to Hinkle's needs pursuant to certain policies or customs—without alleging any facts concerning those policies or customers—he has not stated a claim for supervisory liability[.]"). The underlying incident had nothing to do with a vehicle pursuit, so Plaintiffs' allegations regarding this policy are irrelevant.

Shields had a custom of deliberate indifference as evidenced by her alleged failures to adopt an appropriate prophylactic policy. Cf. Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 201) ("Because municipalities rarely have an official policy that endorses a constitutional violation, Craig must show that Georgia Correctional had a custom or practice of permitting it and that Georgia Correctional's custom or practice was the moving force behind the constitutional violation.") (citation, quotation, and punctuation omitted).[3]

Plaintiffs' allegations on this front, however, are largely threadbare recitals supported by nothing more than conclusory statements. See Iqbal, 556 U.S. at 679 (reiterating that conclusory allegations are "not entitled to the assumption of truth" under Rule 12(b)(6)). And in any event, Plaintiffs must point to multiple, *similar* incidents of misconduct, closely situated in time, to demonstrate a custom of deliberate indifference to constitutional rights— which they fail to do. See Piazza, 923 F.3d at 957 ("[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents."); Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019) ("A plaintiff can only allege the existence of a policy or custom by pointing to multiple incidents or multiple reports of prior misconduct by a particular employee.")

---

[3] Craig involved a municipal liability claim, rather than supervisory one. The policy/custom analysis is the same though; the only difference between the two claims in this respect is who will be held liable (the government or the supervisor, individually).

(citation and punctuation omitted); cf. Harper v. Lawrence County, 592 F.3d 1227, 1237 (11th Cir. 2010) (holding plaintiffs adequately pleaded supervisory liability claim based on policy/custom standard in light of "strikingly similar" incident which had "occurred only one month before" the incident at issue).

Plaintiffs cite five incidents involving an APD officer discharging a firearm into a vehicle (*arguably* relevant in some sense to the incident here[4]), which Plaintiffs appear to highlight in order to *suggest* that Shields adopted a custom of deliberate indifference to constitutional rights. [See Complaint, at ¶¶166–89]. But, even these allegations do not satisfy a custom standard to support their supervisory liability claim.[5] In *three* of the five incidents, Plaintiffs acknowledge that the officers involved were all fired or ultimately resigned *and* that most of them faced criminal sanctions. [Complaint, at ¶¶ 171, 177, 188]. Plaintiffs, therefore, cannot credibly argue that this demonstrates a custom on Shields's part of being deliberately indifferent to constitutional rights. Moreover, Plaintiffs do not allege that the other two incidents—not resulting in terminations or prosecutions—were even constitutional violations at all. [Complaint, at ¶ 166–67, 178–83]. Plaintiffs

[4] Defendants do not concede the point but merely acknowledge that in the morass of irrelevant, impertinent factual allegations these handful of incidents would appear *somewhat* pertinent to the Court's analysis.

[5] It is strange that Plaintiffs even rely on the August 2012 incident [Complaint, at ¶ 166], as somehow relevant to Shields's liability as a supervisor, given that Shields was not even the Chief of Police at that time.

merely cite news articles and recount what supposedly occurred, but there are no allegations that any of these incidents actually rose to the level of a constitutional violation (or were deemed to be so). And in the absence of such allegations, all that can be inferred is that the officers' use of force was not *clearly* unlawful. Finally, and most importantly, *none* of the five incidents are even sufficiently similar to the underlying incident here. Therefore, Plaintiffs do not plausibly allege that Shields can be held *personally* liable for adopting a custom of deliberate indifference.

The third standard for establishing supervisory liability is demonstrating a "widespread pattern of abuse" to which the supervisor was deliberately indifferent. Under this standard, a plaintiff can demonstrate the necessary causal connection for supervisory liability by showing that a history of widespread abuse existed which should have put the responsible supervisor on notice of the need to correct the alleged deprivation from occurring and the supervisor failed to do so. Cottone, 326 F.3d at 1330. But in order to demonstrate widespread abuse, the prior deprivations "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences" because "the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Keith v. DeKalb County, 749 F.3d 1034, 1048 (11th Cir. 2014) (citations, quotations, and punctuation omitted). Plaintiffs certainly attempt to paint a picture of

"widespread abuse" with their collection of newspaper clippings. But, again, for the vast majority of these incidents, Plaintiffs do not allege that a constitutional violation actually occurred. [See, e.g., Complaint, Doc. 1, at ¶¶ 130–35, 160–40]. Indeed, *many* of the incidents occurred *after* the incident here. [Id., at ¶¶ 141, 150]. Thus, Plaintiffs cannot possibly suggest that these incidents would have somehow put Shields on notice *prior* to the incident here.

Finally, Plaintiffs do not plausibly allege a failure to train theory of supervisory liability. See generally, City of Canton v. Harris, 489 U.S. 378 (1989) (articulating failure to train theory). Shields can "only" be liable for a failure to train "where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact.'" Keith, 749 at 1052 (quoting City of Canton, 489 U.S. at 388) (brackets removed). Thus, Plaintiffs "must demonstrate [Shields] had 'actual or constructive notice that a particular omission in [her] training program causes . . . her employees to violate citizens' constitutional rights,' and that armed with that knowledge [Shields] chose to retain the training program." Id. (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011). Moreover, to even establish actual or constructive notice, Plaintiffs must allege "a pattern of *similar* constitutional violations by untrained employees[.]" Id. (citation, quotation, and punctuation omitted, emphasis added). But Plaintiffs do not allege—not even in conclusory fashion—what *particular* defect in APD's training led to the likelihood that a

constitutional violation would occur here. And as discussed throughout, Plaintiffs fail to allege a pattern of *similar* constitutional violations such that they could demonstrate actual or constructive notice. Therefore, Plaintiffs wholly fail to satisfy the first step of the qualified immunity analysis with respect to their supervisory liability claim against Shields.

### 3. Plaintiffs have not alleged that Shields violated clearly established law.

Even assuming Plaintiffs had plausibly alleged a supervisory liability claim, which they have not, Plaintiffs fail to demonstrate that the law was so clearly established at the time of the incident that materially similar case law put Shields on clear notice that her conduct could result in personal liability. This second-step of the qualified immunity analysis, known as the clearly-established-law standard, requires a plaintiff to show that "'existing precedent . . . placed the statutory or constitutional question *beyond debate*' and thus [gave] the official fair warning that his conducted violated the law." Gates, 884. F.3d at 1296 (11th Cir. 2018) (quoting Reichele v. Howards, 566 U.S. 658, 665 (2012) (emphasis added)).

The Supreme Court clarified Harlow's clearly-established-law standard nearly as soon as the Harlow Court announced it. See Anderson v. Creighton, 483 U.S. 635 (1987). Clearly established law must not be defined at a high level of generality lest "Harlow be converted from a guarantee of immunity into a

rule of pleading." <u>Anderson</u>, 483 U.S. at 640. Indeed, in recent years the Supreme Court and the Eleventh Circuit have felt it necessary to reiterate this basic tenet. <u>White v. Pauly</u>, 137 S.Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle[.]"); <u>see</u> <u>Gates</u>, 884 F.3d at 1303 (11th Cir. 2018) ("In framing its inquiry more broadly than the above standard permits, the district court erred, running afoul of the Supreme Court's oft-repeated directive not to define clearly established law at a high level of generality.") (citation and quotation omitted).[6]

Plaintiffs cannot rely on "general, conclusory allegations or broad legal truisms that a right is clearly established." <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1550 (11th Cir. 1994) (citations and punctuation omitted). And there are no materially similar cases holding that, absent notice of a specific need to take preventative measures, a chief of police can nonetheless be held liable for her subordinate's conduct. Indeed, for supervisory liability claims in the excessive-force context, *all* that is clearly established is that supervisors may be held liable where they took *no* action when aware of their subordinates' *particular* unlawful conduct. <u>See</u> <u>Quinette v. Reed</u>, 805 F. App'x 696, 706–07 (11th Cir. 2020). Plaintiffs admit, however, that disciplinary actions were repeatedly

---

[6] <u>See</u> <u>also</u> <u>Kisela v. Hughes</u>, 138 S.Ct. 1148 (2018) (per curiam) (reversing lower court on clearly established prong); <u>Mullenix v. Luna</u>, 136 S.Ct. 305 (2015) (per curiam) (same); <u>City & Cty. of San Francisco v. Sheehan</u>, 135 S.Ct. 1765 (2015) (same); <u>Plumhoff v. Rickard</u>, 134 S.Ct. 2012 (2014) (same).

instituted, so Plaintiffs have not alleged that Shields violated clearly established law. In sum, the supervisory liability claim against Shields should be dismissed on account of qualified immunity.

**C.    The official capacity claim against Shields is redundant and should be dismissed.**

Plaintiffs have also sued Shields in her official capacity. [Complaint, Doc. 1, at ¶ 261]. The Court should waste little time dismissing the claim. The claim is simply redundant of Plaintiffs' claims against the City. <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991) ("In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'") (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)). Thus, because Plaintiffs have also sued the City in Count IV, the official capacity claim against Shields is "functionally equivalent" to that claim, and it should be dismissed as redundant. <u>See</u> <u>id.</u>; <u>see also</u> <u>Gibson v. Hickman</u>, 2 F. Supp. 2d 1481, 1482–83 (M.D. Ga. 1998).

**D.    The <u>Monell</u> claim against the City should be dismissed for reasons similar to Plaintiffs' deficient supervisory liability claim.**

In Count IV, Plaintiffs seek to hold the City liable under the doctrine established in <u>Monell v. New York Department of Social Services</u>, 436 U.S. 658 (1978).  [<u>See</u> Complaint, Doc. 1, at ¶¶ 6, 32]. But a municipality may only be

liable under <u>Monell</u> where it is directly responsible for a constitutional violation; in other words, like supervisory liability claims, municipalities may not be held liable under <u>Monell</u> based upon respondeat superior liability. <u>See</u> <u>Grech v. Clayton Cty.</u>, 335 F.3d 1326 (11th Cir. 2003) (en banc) ("Indeed a [municipality] is liable only when the [municipality]'s 'official policy' causes a constitutional violation.") (quoting <u>Monell</u>, 436 U.S. at 694). Thus, Plaintiffs must show that the constitutional violation they complain of was caused by either: (1) an official promulgated policy of the City or (2) an unofficial custom or practice, demonstrated by the repeated acts of a final policymaker of the City (here, Shields according to Plaintiffs). <u>Grech</u>, 335 F.3d at 1329. As discussed above (in connection with the supervisory liability claim) though, Plaintiffs make no factual allegations of a formal policy that caused Griffin's death, and (again) they do not sufficiently allege a custom theory.

The Eleventh Circuit has made clear that to prevail under a custom theory against a city, the custom "must be so pervasive as to be the functional equivalent of a formal policy." <u>Grech</u>, 335 F.3d at 1330 n.6. In other words, Plaintiffs must "establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." <u>Brown v. City of Fort Lauderdale</u>, 923 F.2d 1474, 1481 (11th Cir. 1991). "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." <u>Moore v. Miami-Dade</u>

County, 502 F. Supp. 2d 1224, 1231 (S.D. Fla. 2007) (quoting Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)). The alleged custom, moreover, must be the "moving force" behind the constitutional violation. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

Plaintiffs do not point to a widespread practice of the City or Shields *condoning* constitutional violations similar to what is alleged to have occurred here. Again, Plaintiffs repeatedly admit that APD officers are routinely terminated, prosecuted, or both when they have been found to have used excessive force. Moreover, Plaintiffs' attempt to demonstrate that the City had a custom of deliberate indifference by pointing to random, isolated incidents of alleged officer misconduct likewise fails. Just as the Eleventh Circuit pointed out in Brooks v. Scheib, "there is a logical explanation as to why a large number of complaints" arise with respect to APD officers. 813 F.2d 1191, 1193 (11th Cir. 1987). The City of Atlanta is one of the largest metropolitan areas in the southeast. Many of the City's officers work in troubled, high crime areas. See id. Thus, it is no surprise that there will be random, isolated incidents of officer misconduct see id.; however, Plaintiffs must point to more to demonstrate a custom of deliberate indifference. It is not enough to say that over time some APD officers have engaged in misconduct. They must demonstrate that the City implemented a specific practice *functionally equivalent* to a law or official policy and that *this practice* ultimately led to the constitutional violation here.

24

Like their supervisory liability claim, however, Plaintiffs merely allege facts consistent with respondeat superior liability. They *do not plausibly allege* how the City itself (not its officers) *caused* the alleged constitutional violation.

**E.    The Court lacks subject matter jurisdiction over the state law claim against the City.**

In Count V of the Complaint, Plaintiffs assert a claim against the City to remedy alleged violations of Georgia's Open Records Act. But this Court lacks subject matter jurisdiction over the claim. See <u>GeorgiaCarry.Org, Inc. v. MARTA</u>, 1:09-CV-594, 2009 WL 5033444 at *10–11 (N.D. Ga. Dec. 14, 2009) (dismissing plaintiff's ORA claim because no supplemental jurisdiction existed). Plaintiffs' ORA claims "do not arise out of a common nucleus of operative fact with any federal law claim in this case." <u>Id.</u>, at *10. "The documents at issue . . . may be relevant to Plaintiffs federal claims" but the claim "is not so related to the federal claims as to form part of the same case or controversy." <u>Melinda v. DeKalb County</u>, 1:08-CV-1596, 2009 WL 10699686, at *1 (N.D. Ga. Oct. 13, 2009) (dismissing plaintiff's ORA claim in § 1983 case).

## CONCLUSION

For the reasons herein, Defendants City of Atlanta and Erika Shields's Motion to Dismiss should be GRANTED.

Respectfully submitted this 16th day of November, 2020.

## RULE 7.1D CERTIFICATE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with the typeface and style requirements in that it contains 13 point Century Schoolbook font.

**HALL BOOTH SMITH, P.C.**

/s/ *R. David Ware*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664
PEARSON K. CUNNINGHAM
Georgia Bar No. 391024

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA  30303-1740
Tel:  (404) 954-5000
Fax: (404) 954-5020
dware@hallboothsmith.com
rbritt@hallboothsmith.com
pcunningham@hallboothsmith.com

*Counsel for Defendants City of Atlanta and Erika Shields*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **Brief in Support of Motion to Dismiss** with the Court using the CM/ECF System.  Notice of this filing will be sent to all parties indicated on the electronic filing receipt.

Eric S. Frederickson
Matthew S. Harman
**HARMAN LAW FIRM, LLC**
3375 Piedmont Rd. NE,
Bldg. 15, Ste. 1040
Atlanta, GA 20505
efrederickson@harmanlaw.com
mharman@harmanlaw.com

Alex R. Merritt
**DeWoskin Law Firm, LLC**
535 North McDonough St.,
Decatur, GA 30030
alex@atlantatrial.com

This the 16th day of November, 2020.

**HALL BOOTH SMITH, P.C.**

/s/  *R. David Ware*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664
PEARSON K. CUNNINGHAM
Georgia Bar No. 391024

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA  30303-1740
Tel:  (404) 954-5000
Fax:  (404) 954-5020
dware@hallboothsmith.com
rbritt@hallboothsmith.com
pcunningham@hallboothsmith.com

*Counsel for Defendants City of Atlanta and Erika Shields*

69990304-1