IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GAYSHA GLOVER, and
COURTNEY GRIFFIN, individually
and on behalf of the ESTATE OF
D'ETTRICK GRIFFIN,
        Plaintiffs,

v.

CITY OF ATLANTA, ERIKA
SHIELDS, OLIVER SIMMONDS,
and DOES 1–5,
        Defendants.

Civil Action No.
1:20-cv-04302-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants the City of Atlanta and Erika Shields's motion to dismiss [ECF 14]. After careful consideration of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. Plaintiffs' claims against Shields, against Does 1–5, and for violation of the Georgia Open Records Act are **DISMISSED**.

## I.    BACKGROUND

For purposes of this Order, the following facts are accepted as true.[1] On January 15, 2019, Atlanta Police Department (APD) Officer Oliver Simmonds shot

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the

18-year-old D'Ettrick Griffin in the back and killed him.[2] Griffin was unarmed and was attempting to drive Simmonds's unmarked APD vehicle away from the gas station where it was parked.[3] Griffin and Simmonds did not have any interaction with each other before Griffin began to drive off in the unmarked car, after which Simmonds fired several shots at Griffin, striking him in the back.[4] The vehicle traveled for a short distance and then crashed into two other vehicles, causing serious injuries to a bystander.[5] Simmonds did not make any effort to render emergency first aid to Griffin, and Griffin was found dead at the scene.[6]

After providing ante litem notice but failing to resolve this matter with the City of Atlanta, Plaintiffs, Griffin's parents, filed suit on behalf of themselves and Griffin's estate.[7] Plaintiffs claim that Simmonds used excessive force in violation of Griffin's constitutional rights and Georgia law, that Shields, as the Chief of Police during the relevant time, and other unnamed defendants are liable as

---

reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]    ECF 1, ¶ 1.

[3]    *Id.* ¶¶ 2, 6–7.

[4]    *Id.* ¶¶ 10, 13–15.

[5]    *Id.* ¶¶ 22–23.

[6]    *Id.* ¶¶ 24–25.

[7]    ECF 1.

Simmonds's supervisors, and that the City of Atlanta and Shields, in her official capacity, are liable for Simmonds's actions under a municipal theory of liability.[8] Plaintiffs also allege that the City of Atlanta violated the Opens Records Act by failing to disclose requested records related to Griffin's death and the subsequent investigation.[9]

The pending motion does not concern Simmonds's actions. Rather, the Defendants argue that the Complaint fails to allege a policy, practice, or custom facilitated by Shields or the City of Atlanta that led to a violation of Griffin's constitutional rights.[10] The Defendants also argue that Plaintiffs' Open Records Act claim should be dismissed for lack of subject matter jurisdiction and that the Doe Defendants should be dismissed as improper fictitious parties.[11] Plaintiffs have responded to the motion to dismiss,[12] to which the City and Shields replied,[13] and Plaintiffs also filed a supplemental brief regarding the recent Eleventh Circuit

---

[8]  *Id.* at ¶¶ 205–67.

[9]  *Id.* at ¶¶ 268–80.

[10]  ECF 14, at 2.

[11]  ECF 14-1, at 8, 25; ECF 18-1 (corrected brief).

[12]  ECF 26.

[13]  ECF 28.

opinion in *Favors v. City of Atlanta*, 849 F. App'x 813 (11th Cir. 2021). The Court held oral argument on May 6, 2021.

## II.    LEGAL STANDARD

The City of Atlanta and Shields bring this motion pursuant to Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim, and 12(b)(1), for lack of supplemental jurisdiction over Plaintiffs' Open Records Act claim.

### A.    Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n,* 605 F. 3d at 1289 (quoting *Twombly*, 550 U.S. at 570).

A complaint is facially plausible when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable

for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court is not bound, however, to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79.

## B.    Dismissal for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction can attack either the basis for jurisdiction as alleged on the face of the complaint or the facts supporting jurisdiction. *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). "If the challenge is facial, 'the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised.' Accordingly, 'the court must consider the allegations in the plaintiff's complaint as true.'" *Id.* (internal citations omitted). The Court merely looks to see

if the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990).

"Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). As the City of Atlanta and Shields do not rely on evidence outside the Complaint, the Court interprets their challenge as a facial attack on subject matter jurisdiction.

## III.  DISCUSSION

Defendants seek dismissal of the municipal liability claims against the City of Atlanta and the supervisory liability claims against Shields because, they argue, the Complaint fails to show how these Defendants caused Simmonds's unconstitutional use of force against Griffin.[14] Defendants are correct that constitutional deprivation claims cannot be brought against an employer or a supervisor on a theory of *respondeat superior*, and so Plaintiffs' allegations must link the City's and Shields's acts, or failures to act, to the deprivation of Griffin's rights.

---

[14]  ECF 18-1, at 2–3.

The Court agrees with Defendants that the Complaint contains a litany of conclusory and irrelevant allegations that do nothing to link the City or Shields to Simmonds's actions. Excluding those conclusory and irrelevant allegations, however, the Complaint contains well-pleaded allegations detailing the circumstances of Griffin's death and similar events involving APD officers shooting at suspects fleeing in vehicles or otherwise engaging in dangerous vehicle pursuit tactics.[15] Plaintiffs also allege that APD, and Shields in particular, failed to implement adequate training on the use of firearms and pursuing vehicles.[16] These allegations, taken as true and viewed in the light most favorable to Plaintiffs, sufficiently link the City of Atlanta to the deprivation of Griffin's constitutional rights. While this is sufficient to state a claim for municipal liability, Plaintiffs have failed to show that Shields can be held personally liable for failing to implement training in addition to imposing other disciplinary and remedial measures that were taken. Shields is therefore entitled to qualified immunity and Plaintiffs cannot pursue their claim for supervisor liability against Shields in her individual capacity.

---

[15]  ECF 1, at ¶¶ 1–35; 165–89.

[16]  *Id.* ¶¶ 194, 235, 264.

### A.     Municipal Liability

Defendants argue that Plaintiffs have failed to state a claim for municipal liability against the City of Atlanta because they do not identify, as required for such a § 1983 claim, an officially promulgated policy or an unofficial custom or practice that led to Griffin's death.[17] Defendants further suggest that the similar incidents of excessive force described in the Complaint are "random, isolated incidents," and that, in a city as large as Atlanta, where many officers work in "troubled" areas, "it is no surprise" that incidents of unlawful force will occur.[18]

42 U.S.C. § 1983  provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 itself creates no substantive rights. *Baker v. McCollan*, 443 U.S. 137, 140, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal

---

[17]   ECF 18-1, at 24.

[18]   *Id.* at 16.

statutes that it describes." *Id.* To succeed on a Section 1983 claim, a plaintiff "must prove that she was deprived of a constitutionally guaranteed right under color of state law." *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989).

The Supreme Court has held that municipalities may be held liable for constitutional deprivations under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688 (1978). "To impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). This liability does not extend to the municipality based on a theory of *respondeat superior*, or "solely because it employs a tortfeasor." *Favors*, 849 F. App'x at 817 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* In some instances, a failure to train may amount to such a policy or custom. *Connick v. Thompson*, 563 U.S. 51, 61 (2001). "A city may be held liable under § 1983 for inadequate police training 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police

come into contact.'" *Favors*, 849 F. App'x at 817 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Though decided on summary judgment, the relevant facts in *Favors* are similar to the allegations in the Complaint here, which the Court accepts as true for purposes of this Order. The Court finds *Favors* instructive as to the instant municipal liability claims. There, the Eleventh Circuit first affirmed the district court's finding that evidence presented on summary judgment of "repeated incidents of APD officers shooting into vehicles" was sufficient to show that the City was on notice that officers "[were] required to deal with suspects attempting to flee in vehicles and need to know when the use of deadly force is appropriate." *Id.* at 818. Thus, the record "establishe[d] that the City knew of a need to train in the particular area of deadly force used against fleeing vehicles." *Id.*

As to deliberate indifference, the Eleventh Circuit found an issue of material fact as to whether the City of Atlanta was deliberately indifferent to this unlawful use of force where there was no evidence that the City implemented particular and "adequate training on the 'usual and recurring' use of deadly force when pursuing a suspect fleeing in a vehicle." *Id.* at 819–20. The Eleventh Circuit found, specifically, that evidence that officers received training on excessive force generally and that the APD had policies on firearm usage was not sufficient at the

summary judgment stage to establish as a matter of law that the City had

sufficiently trained officers in the particular area of using deadly force in response

to persons fleeing in vehicles to avoid municipal liability. *Id.*

> As the Supreme Court has recognized, the use of force in pursuing suspects is a scenario that City policymakers should know to prepare for: [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id.* at 821 (quoting *City of Canton*, 489 U.S. at 390). *See also Brown*, 520 U.S. at 409

("The likelihood that the situation will recur and the predictability that an officer

lacking specific tools to handle that situation will violate citizens' rights could

justify a finding that policymakers' decision not to train the officer reflected

'deliberate indifference' to the obvious consequence of the policymakers' choice—

namely, a violation of a specific constitutional or statutory right.").

Here, Defendants' argument focuses on the related incidents alleged in the

Complaint and whether they put the City on notice. Defendants assert that the

examples are random occurrences, dissimilar to the conduct at issue, that do not

show the City was on notice of a need to train its officers. Defendants would

narrow the conduct allegedly needing correction to the precise circumstances at issue here—an officer using excessive force to stop the theft of his own unmarked, police vehicle in his presence. Certainly, to state a claim under *Monell,* Plaintiffs must allege more than a general apathy towards the use of excessive force, but precedent does not support narrowing the scope of similar conduct to the level of specificity Defendants suggest.

Plaintiffs' Complaint alleges statistical and substantive examples of APD officers using excessive force while pursuing vehicles and shooting into them, injuring or killing the occupants.[19] These allegations are sufficient to overcome the proposition that these incidents are random occurrences involving "bad apples," and to show that the City of Atlanta was on notice of the need to train officers on pursuing suspects fleeing in vehicles. Further, the allegations sufficiently demonstrate that the City was, at the very least, deliberately indifferent to the need to train APD officers on the use of force in these circumstances because it failed to conduct relevant training.[20] Plaintiffs' Complaint sufficiently states a claim for municipal liability against the City of Atlanta.

---

[19]   ECF 1, ¶¶ 95–97, 165–92.

[20]   *Id.* at ¶ 266.

### B.    Allegations Against Defendant Shields

Plaintiffs' claims against Defendant Shields are more precarious. Both parties recognize that, as alleged in the Complaint, Shields's liability hinges on the same facts as the City of Atlanta's.[21] A key difference between Shields and the City, however, is that Shields may—as she has done here—assert the defense of qualified immunity. Defendants argue that Shields is entitled to qualified immunity because the allegations involve her discretionary authority as Chief of Police and Plaintiffs have not shown that she violated clearly established law.[22]

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346

---

[21]   At oral argument, Plaintiffs' counsel noted that Shields's liability is the same as the City of Atlanta's liability because she was the decision maker for the APD, and, therefore, the decision-maker for the City of Atlanta with respect to its police department.

[22]   ECF 18-1, at 12–13.

(11th Cir. 2002). The qualified immunity analysis involves a two-pronged approach. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court must determine (1) if there was a constitutional violation; and (2) whether that violation was of a clearly established constitutional right. *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). To survive a motion to dismiss on the basis of qualified immunity, the complaint must "allege the violation of a clearly established constitutional right." *Id.* (internal quotation marks omitted) (citations omitted).

### i.  Constitutional Violation

The parties do not dispute that Shields's alleged unlawful conduct was done in her discretionary capacity, and both parties recognize that Shields's liability can only arise from her supervisory role. "Supervisory liability under § 1983 occurs 'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible

supervisor on notice of the need to correct the alleged
deprivation, and he or she fails to do so; 2) a supervisor's
custom or policy results in deliberate indifference to
constitutional rights; or 3) facts support an inference that
the supervisor directed subordinates to act unlawfully or
knew that subordinates would act unlawfully and failed
to stop them from doing so.

*Id.*

Importantly, a supervisor can only be held liable under § 1983 when her *own conduct* violates an individual's constitutional rights. Supervisors cannot be held liable on a theory of *respondeat superior. Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). Liability against city officials in their individual capacity is also different from official liability, which is effectively a claim against the city. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Shields, therefore, cannot be held personally liable just because she is Simmonds's supervisor or just because she was the Chief of Police.

The first step in determining liability under § 1983 is "to identify the precise constitutional violation charged . . . and to explain what the violation requires." *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013). Plaintiffs pursue three theories of liability against Shields: (1) that she was aware of Simmonds's history

of domestic violence and failed to take proper remedial action as his supervisor;[23] (2) that she instituted and encouraged a custom condoning the use of excessive force;[24] and (3) that she failed to ensure that the police officers were adequately trained on the use of force while in pursuit of vehicles.[25]

### a.    Domestic Abuse Arrest

Plaintiffs' first theory of liability, that Shields failed to take proper remedial action against Simmonds for domestic abuse, fails. A plaintiff can establish a causal connection between a supervisor's actions and the ultimate deprivation at issue by showing the supervisor was "on notice of the need to correct the alleged deprivation" and failed to do so. However, the alleged deprivations "'must be obvious, flagrant, rampant and of continued duration' in order to provide meaningful notice." *Quinette v. Reed*, 805 F. App'x 696, 706 (11th Cir. 2020) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). The Complaint fails to plausibly allege that Simmonds's domestic violence arrest placed Shields on notice of his propensity to use deadly force in pursuit of a suspect fleeing in a vehicle.

---

[23]   ECF 1, at ¶¶ 58–62, 240.

[24]   *Id.* ¶¶ 241–342.

[25]   *Id.* ¶ 256.

Further, because the allegations in the Complaint show that the APD took steps to discipline Simmonds after his arrest, Shields did not "fail to act" with respect to Simmonds's history of domestic violence. *Quinette*, 805 F. App'x at 706 ("[A]ssuming supervisors were on notice of need to correct [the officer's] behavior, given his history of misconduct, they did not 'fail to do so'" because they investigated the conduct, reprimanded the officer, and even suspended him). The Complaint alleges that Simmonds was given an administrative assignment after the domestic abuse incident and that he was subsequently suspended without pay for five days.[26] Though reasonable people can debate whether the APD and Shields should have done more to discipline Simmonds, the Court cannot find, based on the allegations in the Complaint, that Shields took *no* remedial action.

### b.  Culture of Condoning Excessive Force

Plaintiffs' second theory of liability is that Shields is liable for Simmonds's actions because she created a "culture" within the APD that condoned the use of excessive force. At oral argument, counsel for Plaintiffs repeatedly argued that all Plaintiffs' Complaint needed to do to survive the motion to dismiss was state that APD had a culture condoning excessive force or that it failed to train its officers.

---

[26]  *Id.* ¶¶ 60–61.

Not so. Though the pleading standard under Rule 8 only requires a "short and plain statement of the claim showing that the pleader is entitled to relief," a Complaint cannot survive a motion to dismiss based on conclusory allegations such as "[Shields] engaged in, promulgated, and enforced customs, practices, policies, and procedures that proximately caused the use of excessive force against [Griffin]."[27] The allegations in the Complaint are too general to support a claim for supervisory liability on these grounds. Further, although the allegations in the Complaint detailing examples of use of excessive force by APD officers are certainly disturbing, and buttress the more specific allegations regarding APD officers' vehicle pursuit tactics, standing alone they fail to connect Shields to Griffin's death. The Complaint must allege a specific act, policy, or custom related to the constitutional deprivation at issue.

Moreover, the Complaint contradicts itself in stating that the APD failed to take any action to redress the use of excessive force by citing circumstances where the APD investigated such events,[28] fired officers for use of excessive force,[29] or

---

27    *Id.* ¶ 235(a).

28    *Id.* ¶ 98.

29    *Id.* ¶¶ 127, 146, 151, 177, 188.

otherwise took remedial action.[30] Allegations that a custom or policy constitutes deliberate indifference must be based on more than gross negligence, and the allegations that the APD did in fact take corrective action preclude such a finding. *Shuford v. Conway*, 666 F. App'x 811, 819 (11th Cir. 2016) (a record showing the supervisor referred incidents of excessive force for further investigation precluded a finding of supervisory liability under theory of deliberate indifference). Plaintiffs' second theory of liability is insufficient to save the supervisory liability claim from dismissal.

### c.    Failure to Sanction

Finally, Plaintiffs allege that, around the time of Griffin's death, APD officers engaged in widespread dangerous vehicle pursuit tactics, and that Shields failed to correct this widespread conduct by disciplining or training APD officers. The Court finds that Shields cannot be liable for an alleged failure to take adequate disciplinary action because, as Defendants note,[31] the Complaint alleges that APD *did* take remedial action against officers who used excessive force while pursuing a suspect fleeing in the vehicle. Thus, Shields cannot be said to have acted with deliberate indifference in failing to discipline.

---

[30]    *Id.* ¶¶ 113, 139.

[31]    ECF 28, at 5.

#### d.    Failure to Train

However, as with municipalities, "[s]upervising officers can be held independently liable under § 1983 for a failure to train their subordinates." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 820 (11th Cir. 2017). The standard for determining a supervisor's failure to train is similar to that under *Monell*, but still requires a causal connection between the supervisor's act and the unconstitutional conduct. *See Greason v. Kemp,* 891 F.2d 829, 837 (1989) (comparing supervisor liability for failure to train analogous to municipal liability for failure to train).

> Only when [a supervisor's] failure to train amounts to "deliberate indifference" can it properly be characterized as the "policy" or "custom" that is necessary for section 1983 liability to attach. Failure to train can amount to deliberate indifference when the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.

*Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397–98 (11th Cir. 1994) (citing *City of Canton*, 489 U.S. at 388 and *Greason v. Kemp*, 891 F.2d 829, 837 (11th Cir. 1990); additional citations omitted).

Plaintiffs' Complaint sufficiently alleges a history of widespread abuse of dangerous vehicle pursuit tactics. The Complaint describes in detail five similar

incidents, all of which took place before Simmonds shot Griffin, where APD officers shot into moving vehicles, despite there being no threat of physical harm to anyone, and either seriously injured or killed a vehicle occupant.[32] The Complaint also lists statistics regarding the APD's use of force, including those involving a firearm and those involving shooting into vehicles.[33]

These allegations are sufficient to show that Shields was on notice that the APD had a widespread issue with using deadly force while pursuing fleeing suspects inside of moving vehicles. *Favors*, 849 F. App'x at 818 (the City of Atlanta was on notice that officers needed training on when to use deadly force on encountering a suspect fleeing in a vehicle). Moreover, whether the APD officers involved in the incidents described in the Complaint were disciplined does not speak to whether Shields, as the supervising official of the APD, failed to train officers on the use of force in pursuing suspects fleeing in vehicles. Viewing the allegations favorably to Plaintiffs, the fact that these individuals were disciplined shows that the force used was improper, and yet continued to occur because of a failure to train.

---

[32]  *Id.* ¶¶ 165–89.

[33]  *Id.* at ¶¶ 95–99.

The Complaint therefore sufficiently alleges that Shields committed a constitutional violation connected to the deprivation of Griffin's constitutional rights by not implementing training on the proper use of force against suspects fleeing in vehicles. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (allegations stated a claim against public safety director for supervisory liability where he was responsible for setting policy and disciplining officers and failed to take corrective steps even though he was aware of use of excessive force).

The Court comes to this conclusion cautiously. Though precedent permits both municipal liability against a city and personal liability against a supervisor for failure to train based on the same facts, this falls dangerously close to permitting official liability claims against individuals to proceed in tandem with municipal liability claims, which is contrary to law. *Busby*, 931 F.2d at 776. The present case is a clear example of this problem. As the parties concede, Shields's alleged liability is based solely on her position as Chief of the APD at the time of the shooting, and so her actions are the City of Atlanta's actions for purposes of this lawsuit. This logic blurs the line between official and personal liability and contravenes the very purpose of qualified immunity.

### ii.    Clearly Established Law

Defendants argue that, even if the allegations show a constitutional violation, Plaintiffs have not shown that the constitutional right at issue here was clearly established at the time of the violation. Defendants argue that liability is only clearly established for supervisors who are aware of particular unlawful conduct and take no action, not where, as here, the conduct is generalized and the supervisor took some corrective action.[34] The Court agrees. Though Shields may have been required to address the issue of APD officers engaging in dangerous pursuit tactics *ex ante* through training, no clearly established law put her on notice that she needed to do so in addition to other *ex post* disciplinary and investigative actions.

"A plaintiff cannot rely on 'general, conclusory allegations' or 'broad legal truisms' to show that a right is clearly established." *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir. 1994) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993)). Instead,

> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,

---

[34]    ECF 18-1, at 22–23.

> but it is to say that in the light of pre-existing law the
> unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted). "Fair

warning is most commonly provided by materially similar precedent from the

Supreme Court, [the Eleventh Circuit], or the highest state court in which the case

arose," but can also be established by "[a]uthoritative judicial decisions . . . that

are clearly applicable to the conduct at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1296

(11th Cir. 2018) (internal citations omitted). "And occasionally, albeit not very

often, it may be obvious from 'explicit statutory or constitutional statements' that

conduct is unconstitutional." *Id.* at 1296–97 (internal citations omitted). "In most

cases, fact-specific precedents are necessary to give an officer fair warning of the

applicable law." *Battiste v. Sheriff of Broward Cnty.*, 261 F. App'x 199, 202 (11th Cir.

2008) (finding sheriff was entitled to qualified immunity where he had no fair

warning he was required to train "borrowed," out-of-jurisdiction officers on

probable cause).

The Complaint alleges that Shields did not implement appropriate training

on vehicle pursuit tactics, but it also alleges that she disciplined and investigated

officers who engaged in dangerous use of such tactics.[35] Authoritative decisions

---

[35]  *Id.* ¶¶ 139, 177, 188.

do establish that supervisors may be liable for failing to train officers on excessive force, *see Knight*, 856 F.3d at 820, but Plaintiffs have cited no cases, and the Court found none, clearly establishing that a supervisor must implement training **in addition to** other remedial action when faced with particular unconstitutional conduct. The general proposition that supervisors of law enforcement should train officers when necessary is precisely the kind of legal truism that cannot establish a clear constitutional right. Shields is, therefore, entitled to qualified immunity.

### *iii.* **Claims Against Shields in Her Official Capacity**

Defendants argue that the claims against Shields in her official capacity are redundant of the municipal liability claims and should be dismissed.[36] The Court agrees. "In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby*, 931 F.2d at 776 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, "there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly," and claims against

---

[36] ECF 18-1, at 23. At oral argument, counsel for Plaintiffs conceded that the claims against Shields in her official capacity are subject to dismissal on this basis.

government officials in their official capacity are appropriately dismissed as redundant where the municipality is also named as a defendant. *Id. See also Hill v. City of Atlanta,* No. 1:15-CV-01421-AT, 2016 WL 11586947, at *4 (N.D. Ga. Mar. 29, 2016) (dismissing claims against defendant officers in their official capacity where plaintiffs also brought claims against the City of Atlanta). Accordingly, the Court dismisses the claims against Shields in her official capacity.

## C.    Fictitious Party Practice

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). However, there is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be, 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber,* 951 F.2d 1210, 1215-16 (11th Cir. 1992)).

Plaintiffs allege that Does 1–5 are employees of APD and are also supervisors of Simmonds. The Complaint contains no description of these Doe Defendants beyond their supervisory role, and the theory of liability alleged as to these Defendants is entirely speculative and conclusory. The Complaint, therefore, does not contain enough detail to overcome the rule against fictitious parties and the Doe defendants must be dismissed. If discovery reveals more information

about these alleged individuals, Plaintiffs are permitted to seek leave to amend their Complaint.

### D. Supplemental Jurisdiction Over Plaintiff's Open Records Act Claim

Plaintiffs allege that the City of Atlanta violated Georgia's Open Records Act by failing to produce records related to Simmonds shooting Griffin. O.C.G.A. § 50-18-70(b)(1)(A). This claim is based on state law, "and thus, absent diversity of citizenship of the parties, is not within the original subject matter jurisdiction of this court." *Ford v. City of Oakwood*, 905 F. Supp. 1063, 1066 (N.D. Ga. 1995). Plaintiffs request that the Court exercise supplemental jurisdiction over the Open Records Act claim because the facts underlying the claim also demonstrate a cover-up, which further supports their § 1983 claim.

The Court is skeptical about the allegations of an unlawful cover-up, as they are largely conclusory. Regardless, though "[t]he documents at issue in the Open Records Act claim may be relevant to plaintiff's federal claims," the connection between the City of Atlanta's alleged failure to provide documents and the federal § 1983 claim related to Simmonds's excessive force is too attenuated for the Court to exercise supplemental jurisdiction. *Ford*, 905 F. Supp. at 1066 (dismissing open records claim on jurisdictional grounds as it was not related to the § 1983 claims); *see also GeorgiaCarry.Org, Inc. v. Metro. Atlanta Rapid Transit Auth.*, No. CIV.A 109-

CV-594-TWT, 2009 WL 5033444, at *11 (N.D. Ga. Dec. 14, 2009) (same); *Melinda v. DeKalb Cnty. Sch. Dist.*, No. 1:08-CV-1596-CAP-GGB, 2009 WL 10699686, at *8 (N.D. Ga. Oct. 13, 2009) (same). The Court therefore dismisses the Open Records Act claim for lack of subject matter jurisdiction.

## IV.   CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** the City of Atlanta and Erika Shields's motion to dismiss [ECF 14]. Plaintiffs' claims against Shields, against Does 1–5, and for violation of the Georgia Open Records Act are **DISMISSED**. The City of Atlanta is **DIRECTED** to Answer the surviving portions of the Complaint within 14 days of this Order.

**SO ORDERED** this the 20th day of July 2021.

Steven D. Grimberg
United States District Court Judge