IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GAYSHA GLOVER and COURTNEY GRIFFIN, individually and on behalf of the ESTATE OF D'ETTRICK GRIFFIN<br><br>*Plaintiffs*,<br><br>*versus*<br><br>CITY OF ATLANTA; ERIKA SHIELDS; OLIVER SIMMONDS; and DOES 1–5,<br><br>*Defendants*. | Civil Action File No. 1:20-cv-04302-VMC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT OLIVER SIMMONDS' MOTION TO STAY** |

## BACKGROUND

This matter involves the death of Plaintiffs' son, D'Ettrick Griffin. On January 15, 2019, Atlanta Police Officer Defendant Oliver Simmonds shot D'Ettrick in the back while D'Ettrick was driving away. With D'Ettrick dead, the vehicle then collided into a parked car occupied by Lois Osborne who was injured.

Ms. Osborne filed a suit concerning her injuries against Defendants Simmonds and Atlanta in the State Court of Fulton County in mid-2020. Plaintiffs filed this suit in October 2020. In the *Osborne* matter, Defendant Simmonds gave a deposition on September 9, 2021. During that deposition he refused to answer

1

several discreet questions on the basis of the Fifth Amendment privilege against compelled self-incrimination. Defendant Simmonds gave a deposition in this matter on July 13, 2022. During that deposition Defendant Simmonds did not plead the Fifth Amendment a single time. On October 28, 2022, the Fulton County District Attorney presented an indictment to a Grand Jury. Defendant Simmonds exercised his right to voluntarily make a statement to the Grand Jury. A True Bill was granted, and a warrant issued. Defendant Simmonds was granted bond on November 3, 2022. Defendant Simmonds responded to Plaintiffs' second set of interrogatories on November 8, 2022. Nearly a month after the indictment, Defendant Simmonds moved the Court to stay this matter.

## LEGAL STANDARD

### I. A Civil Case Should be Stayed Pending a Criminal Prosecution Only Under Special Circumstances

The Court is not required to stay civil proceedings pending resolution of a related criminal prosecution unless "'special circumstances' so require in the 'interests of justice.'" *United States v. Lot 5*, 23 F.3d 359, 364 (11th Cir. 1994) (quoting *United States v. Kordel*, 397 U.S. 1, 12 & n. 27). It appears that district courts have, at times, weighed six factors to determine whether such "special circumstances" exist: 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether

the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.  *See, e.g.*, *S.W. v. Clayton Cty. Pub. Sch.*, 185 F. Supp. 3d 1366, 1371–72 (N.D. Ga. 2016).

## II.   11th Circuit Precedent Requires the Court to Consider Only One Factor Rather Than Weigh Any Six Factors

The 11th Circuit Court of Appeals, however, has never required, approved of, or even considered the above six-part analysis.  Among 11th Circuit district courts, the six-factor test first appears in a 2009 opinion by the Southern District of Alabama, which in turn cites for the test an opinion from the Western District of Michigan.  *Lay v. Hixon*, No. 09-0075-WS-M, 2009 U.S. Dist. LEXIS 40995, at *7 (S.D. Ala. May 12, 2009) (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)).  There is no rule or precedent binding on this Court that compels or even suggests that it should consider those six factors.

Rather, in considering stays of civil cases pending criminal prosecution, the 11th Circuit Court of Appeals has considered one single factor:  whether invoking the privilege against self-incrimination would cause the defendant to lose the civil case as a matter of law.  "The court may deny a stay so long as the privilege's invocation does not **compel** an adverse judgment against the claimant." *United*

3

*States v. Lot 5, Fox Grove, Alachua Cnty.*, 23 F.3d 359, 364 (11th Cir. 1994) (emphasis added). "[A] blanket assertion of the privilege [against compulsory self-incrimination] is an inadequate basis for the issuance of [a] stay." *Id*.

District courts in the 11th Circuit have repeatedly applied this standard, rather than weighing six factors. *See Svistina v. Elbadramany*, No. 22-cv-20525, 2022 U.S. Dist. LEXIS 94099, at *4 (S.D. Fla. May 25, 2022) ("Courts consider whether a defendant in both a civil and criminal matter is forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings.") (internal quotations omitted); *Court-Appointed Receiver Mgmt. Grp. LLC v. Lauer*, No. 05-60584, 2009 U.S. Dist. LEXIS 23790, at *8 (S.D. Fla. Mar. 25, 2009) ("The law in the Eleventh Circuit requires consideration of whether, as a result of invoking the privilege, the defendant faces certain loss of the civil proceeding on summary judgment if the civil proceeding were to continue.") (citing *Lot 5*, 23 F.3d at 364 and *Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944 (11th Cir. 1990)); *Glob. Aero., Inc. v. Platinum Jet Mgmt., LLC*, No. 09-60756-CIV, 2009 U.S. Dist. LEXIS 81380, at *4-5 (S.D. Fla. Aug. 19, 2009) ("The law in the Eleventh Circuit requires consideration of whether, as a result of invoking the privilege, the defendant faces certain loss of the civil proceeding on summary judgment if the civil proceeding were to continue.").

11th Circuit district courts have acknowledged that there are "cases from outside this jurisdiction which utilize more lenient standards for staying civil proceedings when there is a pending criminal proceeding against the same defendant." *Court-Appointed Receiver Mgmt. Grp. LLC v. Lauer*, No. 05-60584, 2009 U.S. Dist. LEXIS 23790, at *7–8 (S.D. Fla. Mar. 25, 2009). But the 11th Circuit standard is "more narrow[.]" *Id.* at 8. In *Lauer*, the court made it abundantly clear just how high the standard is in this circuit: "Movants must show that invocation of the privilege in the instant matter will result in certain loss by automatic summary judgment. This must be an actual adverse judgment, and not merely the loss of the defendant's most effective defense." *Court-Appointed Receiver Mgmt. Grp. LLC v. Lauer*, No. 05-60584-CIV-MARRA, 2009 U.S. Dist. LEXIS 23790, at *8-9 (S.D. Fla. Mar. 25, 2009) (internal quotations omitted).

## ARGUMENT

**I.     Defendant Simmonds Does Not Face Certain Loss by Automatic Summary Judgment**

Defendant Simmonds has already given a deposition in this matter. Accordingly, there is no argument that he "is forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings." *Svistina v. Elbadramany*, No. 22-cv-20525, 2022 U.S. Dist. LEXIS 94099, at *4 (S.D. Fla. May 25, 2022). Defendant Simmonds already chose

5

whether to waive his privilege against self-incrimination in this matter without first moving the Court for a stay.

Plaintiffs may indeed seek summary judgment based upon testimony that Defendant Simmonds has already willingly provided, among other evidence. But there is no indication that Defendant Simmonds faces a choice of waiving the privilege or losing on summary judgment. Indeed, there is currently no indication that Defendant Simmonds faces any choice regarding invoking the privilege, regardless of what the result of doing so would be. Plaintiffs cannot force Defendant Simmonds to testify in deposition again without leave of Court. Plaintiffs currently have no intention of seeking leave to do so. Should this change, and Defendant Simmonds actually face a choice regarding the privilege, he can move for a stay at that more appropriate time:

> If at a later stage when the record is more fully developed, after Movants' have asserted their defenses to the [complaint] and actually invoked their Fifth Amendment privilege in response to particular discovery requests or questions, and if it appears that because of the invocation of their privilege against self-incrimination it will result in a certain loss by automatic summary judgment, Movants may reassert their motions to stay.

6

*Court-Appointed Receiver Mgmt. Grp. LLC v. Lauer*, No. 05-60584, 2009 U.S. Dist. LEXIS 23790, at *10-11 (S.D. Fla. Mar. 25, 2009).

## II. If the Court Chooses to Consider the Six Factors, They Nonetheless Weigh Against a Stay

Under the only binding 11th Circuit precedent, the analysis stops with the above determination of whether Defendant Simmonds must choose between invoking the privilege or automatically losing on summary judgment. *United States v. Lot 5, Fox Grove, Alachua Cnty.*, 23 F.3d 359, 364 (11th Cir. 1994). Nonetheless, in the event the Court wishes to consider the six factors discussed in several district court opinions, Plaintiffs will address them below.

### A. The Issues in the Criminal Case Do Not Substantially Overlap with the Issues Presented in the Civil Case

The criminal prosecution of Defendant Simmonds of course involves the discreet issue of his own conduct in shooting D'Ettrick Griffin. While this case concerns that conduct as well, it also involves civil rights claims against the City of Atlanta separately. Plaintiffs' claims against the City are more complex and discovery-intensive. The issues in Plaintiffs' claims against the City concern, among other things: whether the City had inappropriate policies in place or lacked appropriate policies for police officers; whether the City provided appropriate training to police officers; whether the City appropriately supervised and

7

disciplined police officers who used excessive force; and whether the City ratified Defendant Simmonds' actions. These are matters of the City's, not Defendant Simmonds' conduct.

Discovery from Defendant Simmonds has been largely, if not entirely, completed. The remaining discovery to be completed will come from the City concerning the matters listed above. Accordingly, because Defendant Simmonds waited until this late date to seek a stay, the portions of this civil matter that may have overlapped with the criminal prosecution have already been completed. At this point in the litigation, there is essentially no overlap between the cases and there will not likely be any again until trial. As noted above, Defendant Simmonds is free to reassert his request for a stay if a trial in this matter is set while the criminal prosecution is still pending. *Court-Appointed Receiver Mgmt. Grp. LLC v. Lauer*, No. 05-60584-CIV-MARRA, 2009 U.S. Dist. LEXIS 23790, at *10-11 (S.D. Fla. Mar. 25, 2009).

### B. The Status of the Case Weighs Against a Stay Because Discovery as to Defendant Simmonds is Largely Complete

This civil matter has been pending since late 2020 while the criminal prosecution was just recently initiated. Plaintiffs received written discovery responses from Defendant Simmonds early on. Plaintiffs then took Defendant Simmonds' deposition. Plaintiffs then sent, and have received responses to,

follow-up written discovery regarding issues that were discovered during Defendant Simmonds' deposition. Discovery from Defendant Simmonds is largely, if not entirely, complete.

Defendant argues that a stay should be granted because the state court has ordered as a condition of bond that Defendant have no contact with witnesses, including Plaintiff Gaysha Glover. Defendant asserts that "he or his counsel may have to have direct and/or indirect contact with [witnesses] as the civil case proceeds." [Doc. 96-1] at 7. The bond order clearly allows Defendant Simmonds' counsel to do exactly that. It provides: "the Court ORDERS that the Defendant have no contact, directly or indirectly, **except through his attorney**, with any witnesses involved in this case." [Doc. 96-1] at 21 (emphasis added). Defendant Simmonds provides no explanation as to why he would need to personally contact witnesses rather than through his attorneys. Indeed, for a party to personally contact witnesses would be unusual and perhaps even concerning in most any wrongful death case—certainly in this one, and especially if Defendant Simmonds intends to contact the Plaintiffs.

### C. Plaintiffs Would be Substantially Prejudiced by Further Delay

There is no question that Plaintiffs have an interest "in proceeding expeditiously[.]" *Harris v. City of Boynton Beach*, No. 9:16-CV-80148, 2016 U.S.

9

Dist. LEXIS 90978, at *7 (S.D. Fla. July 13, 2016). Additionally, if the case is stayed Plaintiffs "would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time[.]" *Young v. Peraza*, No. 15-60968, 2015 U.S. Dist. LEXIS 101844, at *5 (S.D. Fla. Aug. 4, 2015). Accordingly, this factor weighs in favor of denying Defendant Simmonds' request for a stay.

### D. Defendant Simmonds Will Not Be Substantially Prejudiced or Burdened by the Progression of This Case

Defendant cites *Svistina v. Elbadramany*, 2022 U.S. Dist. LEXIS 94099 (S.D. Fla., May 25, 2022) for the proposition that he has not waived his Fifth Amendment right against compelled self-incrimination. *Svistina*, however, involved a "limited declaration filed in support of [the defendant's] Motion to Dismiss" which focused "on the issue of whether diversity jurisdiction exists[.]" *Id.* at 6–7. In the same opinion, the court explained that the plaintiff "cites to various cases where the courts found waiver of the Fifth Amendment privilege against self-incrimination when an individual responded to discovery requests such as interrogatories or questions at a civil deposition." *Id.* Indeed, there are many such cases. This is because providing substantive testimony—as opposed to providing a limited declaration regarding jurisdictional issues—does in fact waive the privilege. *See, e.g., United States v. White*, 846 F.2d 678, 690 (11th Cir. 1988) ("A witness who testifies at any proceeding, instead of asserting his Fifth

10

Amendment rights, loses the privilege.  A civil deponent cannot choose to answer questions with the expectation of later asserting the Fifth Amendment.") (citing *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) and *Garner v. United States*, 424 U.S. 648, 654–55 (1976)).

Defendant also points to "Plaintiffs' continued consent motions to extend discovery" for the argument that Plaintiffs do not desire expeditious litigation. While these extensions have been necessary, they were by no means Plaintiffs' desire.  Plaintiffs filed this action on October 20, 2020.  Defendant Simmonds did not answer and default was entered on November 19, 2020.  The Court scheduled an evidentiary hearing regarding the judgment against Defendant Simmonds for May 6, 2021.  On May 6, 2021, over five months after he was served with process, Defendant Simmonds filed an answer and moved the Court to set aside the default, which the Court eventually did.  Meanwhile, the other defendants filed a motion to dismiss on November 16, 2020, which resulted in a stay of discovery.  [Doc. 14]. The Court ruled on that motion on July 20, 2021.  [Doc. 50].

The Plaintiffs and Defendant City of Atlanta then, finally, filed a Joint Preliminary Report and Discovery Plan on September 2, 2021.  But Defendant Simmonds did not participate in the plan.  *See* [Doc. 62].  In the joint report, the City requested a bifurcation of discovery which the Court later denied after holding

11

a scheduling conference. [Doc. 64]. The defendants then insisted on entry of a protective order of confidentiality prior to producing documents. Plaintiffs cooperated in preparing and moving the Court for such an Order, which the Court entered on November 12, 2021. [Doc. 76]. Nonetheless, it was not until approximately six months later that Plaintiff finally received the bulk of the City's document production. The most recent document production was made on March 23, 2022. It is necessary, of course, for Plaintiffs to review those documents prior to the depositions of City personnel. And the documents are required for Plaintiffs' experts to prepare reports and give depositions. So, Plaintiffs were forced to ask for an extension of discovery. [Doc. 84]. Since that time, Plaintiffs have repeatedly asked for several outstanding written discovery items as well as deposition dates for certain City of Atlanta personnel. Unfortunately, Plaintiffs still have not received those items or been offered deposition dates. It was, therefore, necessary to seek yet another extension of discovery, which was done via a motion in which all parties joined. [Doc. 93].

Plaintiffs have suffered enough delay in resolving this matter. Contrary to suggesting that more delay is acceptable, it suggests that no more should be tolerated. Defendant Simmonds' request to further delay the case at this late stage would compound upon the prejudice to the Plaintiffs caused by the delay that has

already occurred.

### E.     The Interest of the Court Weighs Against Granting the Stay

The Court, of course, has an "interest in judicial efficiency" which weighs against staying actions. *Home Ins. Co. v. Coastal Lumber Co.*, 575 F. Supp. 1081, 1083 (N.D. Ga. 1983). *See also Tompkins-Holmes v. Gualtieri*, No. 8:17-cv-52-T-33AEP, 2017 U.S. Dist. LEXIS 21747, at *9 (M.D. Fla. Feb. 16, 2017) ("both the public and the Court have an interest in the expeditious resolution of civil claims for constitutional violations, which would not be served by staying the case until whenever the criminal proceedings resolve"). It is indisputable that the Court has an "interest in moving cases forward and resolving the cases on its docket[.]" *United States ex rel. Silva v. VICI Mktg., LLC*, No. 8:15-cv-444-T-33TGW, 2019 U.S. Dist. LEXIS 18217, at *10 (M.D. Fla. Feb. 5, 2019).

Due to the procedural and discovery delays discussed above, this matter has already languished on the Court's docket for quite some time. The interests of the Court also, therefore, weigh against granting a stay.

### F.     The Public Interest Weighs Against Granting the Stay

There is significant public interest in cases involving police violence. *Tompkins-Holmes v. Gualtieri*, No. 17-cv-52, 2017 WL 638663, at *3 (M.D. Fla. Feb. 16, 2017) ("both the public and the Court have an interest in the expeditious

13

resolution of civil claims for constitutional violations, which would not be served by staying the case until whenever the criminal proceedings resolve"); *Young*, 2015 WL 4639736, at *2 ("[T]he public has an interest in the timely resolution of this civil case, involving the death of a citizen as a result of allegedly excessive force by a police officer . . . ."). *See also Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1383 (S.D. Fla. 2015) ("[I]t is against the public interest to grant a stay that could last indefinitely."). Therefore, granting a stay in this case is contrary to the public interest.

### III.  Any Stay Should be Limited in Duration and Scope

Finally, in the event the Court is inclined to order a stay, it should be finite and limited to the party who has been criminally charged.

Defendant City of Atlanta is not party to the criminal case against Defendant Simmonds. Most importantly, as noted above, Plaintiffs and the City can complete the remaining discovery with essentially no involvement from Defendant Simmonds. This, again, is one of the reasons that no stay at all is necessary at this time. But certainly, there is no reason that a stay need apply to more than just Defendant Simmonds. Rather, the Plaintiffs and Defendant City of Atlanta can finish preparing their cases for trial while the criminal proceeding advances. *See S.W. v. Clayton Cty. Pub. Sch.*, 185 F. Supp. 3d 1366, 1373 (N.D. Ga. 2016)

(staying the case only with respect to the individual defendant who was criminally charged). This would at least minimize the burden and inefficiency caused by a stay.

Additionally, no stay should be indefinite. *See S.W.*, 185 F. Supp. 3d at 1373 (noting that "the Court is not inclined to grant an indefinite stay pending final resolution of the criminal proceedings" and entering a stay of 120 days). Accordingly, any stay should be limited in time and include direction for Defendant Simmonds to keep the Court and parties apprised of the status of the criminal proceedings, including any plea entries or trial dates.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Defendant Simmonds Motion for a Stay.

**DATED**:  December 5, 2022.

/s/ Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783
Matthew S. Harman
Georgia Bar No: 327169

**HARMAN LAW FIRM LLC**
3575 Piedmont Road, NE
Bldg 15, Suite 1040
Atlanta, GA 30505
Telephone:  (404) 554-0777
Facsimile:  (404) 424-9370

        Email:  mharman@harmanlaw.com
           efredrickson@harmanlaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1B.  This pleading has been prepared in Times New Roman font, 14 point.

## CERTIFICATE OF SERVICE

I certify that today I served a true and correct copy of the following document using the Court's CM/ECF system, which will automatically serve a copy on all counsel of record.

**DATED**:  December 5, 2022.

/s/Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783