IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GAYSHA GLOVER and COURTNEY GRIFFIN, individually and on behalf of the ESTATE OF D'ETTRICK GRIFFIN,<br><br>*Plaintiffs*,<br><br>*versus*<br><br>CITY OF ATLANTA; ERIKA SHIELDS; OLIVER SIMMONDS; and DOES 1–5,<br><br>*Defendants*. | Civil Action File No. 1:20-cv-04302-VMC<br><br>**MOTION FOR SPOLIATION SANCTIONS AGAINST DEFENDANT OLIVER SIMMONDS** |

## INTRODUCTION

On January 15, 2019, Defendant APD Officer Oliver Simmonds shot D'Ettrick Griffin in the back, killing him as he fled in Simmonds' vehicle. D'Ettrick was not armed. Simmonds' sole justification for killing D'Ettrick is his allegation that his jacket was trapped in the door of the moving car, and, for some reason, shooting the driver was the only way to free his jacket from the door. Simmonds testified that his jacket was torn by the car door. But he failed to preserve the jacket, which would have proven—or disproven—his entire defense.

1

## **LEGAL STANDARD**

While Federal Rule of Civil Procedure 37(e) governs sanctions for destruction of ESI, common law still governs the failure to preserve tangible evidence. *Tripp v. Walmart, Inc.*, No. 8:21-cv-510-WFJ-SPF, 2023 U.S. Dist. LEXIS 12867, at *7 (M.D. Fla. Jan. 25, 2023). *See also Koop v. Future Motion, Inc.*, No. 3:22-cv-134-TJC-PDB, 2023 U.S. Dist. LEXIS 131551, at *22 n.4 (M.D. Fla. June 14, 2023) ("Federal Rule of Civil Procedure 37(e) does not govern whether to impose spoliation sanctions" with regard to "tangible evidence"). Under the common law analysis, there is a two-step inquiry considering first whether spoliation occurred and, second, whether sanctions are appropriate.

**I.      Whether Spoliation Occurred**

Under the common law, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (unpublished)). Spoliation is an evidentiary issue and the party claiming spoliation must prove it only by a preponderance of the evidence. *See Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1318 (11th Cir. 2010); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939,

944 (11th Cir. 2005).

To prove spoliation, the moving party must show: (1) the missing evidence existed at one time; (2) the opposing party had a duty to preserve the evidence; and (3) the evidence was crucial or necessary to the litigation. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011).

The opposing party has a duty to preserve evidence "when litigation is reasonably anticipated." *Zurich Am. Ins. Co. v. Steve Ayers Constr. Co.*, No. 1:19-cv-4807-MLB, 2022 U.S. Dist. LEXIS 18202, at *35 (N.D. Ga. Feb. 1, 2022) (citing *In re Delta Antitrust Litig.*, 770 F. Supp. 2d at 1307). *See also Walker v. U.S., I.R.S.*, No. 4:07-cv-0102, 2009 U.S. Dist. LEXIS 40097, 2009 WL 1241929, at *1 (N.D. Ga. Feb. 26, 2009) (the duty to preserve evidence exists when litigation is "reasonably foreseeable").

To prove that the evidence was "crucial or necessary," Plaintiffs need only to establish "that the destroyed evidence was relevant to a claim or defense such that the destruction of that evidence resulted in prejudice.'" *Mendenhall v. Blackmun*, No. 11-11170, 2012 WL 360471, at *3 (11th Cir. Feb. 6, 2012) (quoting *Eli Lilly*, 615 F.3d at 1318).

## II. Whether Sanctions Are Appropriate

If spoliation has occurred, courts then evaluate five factors in determining

whether sanctions are warranted: (1) whether the movant was prejudiced as a result of the destruction of evidence; (2) whether any prejudice can be cured; (3) the importance of the evidence; (4) whether the spoliator acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded. *Zurich Am. Ins. Co. v. Steve Ayers Constr. Co.*, No. 1:19-cv-4807-MLB, 2022 U.S. Dist. LEXIS 18202, at *29 (N.D. Ga. Feb. 1, 2022) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005).

Malice is not required to find bad faith; instead the Court should consider whether "the circumstances of the act . . . manifest bad faith." *Vick v. Tex. Emp't Com*, 514 F.2d 734, 737 (5th Cir. 1975). *See also Zurich*, 2022 U.S. Dist. LEXIS 18202, at *29-30 (N.D. Ga. Feb. 1, 2022) ("Malice is not required to find bad faith, instead '[t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party.'") (quoting *Flury*, 427 F.3d at 946).

The Court should also consider whether there is other evidence that refutes what the spoliator claims about the missing evidence, and whether the spoliator "had any motive or opportunity to try to tamper with" the missing evidence. *Bashir v. AMTRAK*, 119 F.3d 929, 932 (11th Cir. 1997).

Additionally, "Georgia courts have held parties who are experienced in claims handling and litigation procedure, such as an insurance company, to higher

standards than laypersons in evaluating their obligation to preserve evidence." *S. Ga. Prods. V. Pioneer Mach., Inc.*, No. 1:02-CV-0886-JOF, 2004 U.S. Dist. LEXIS 30707, at *8 (N.D. Ga. Mar. 31, 2004).

Finally, "[d]istrict courts are afforded broad discretion in determining whether to award spoliation sanctions." *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). Such sanctions "may include an adverse judgment, the denial of a defendant's motion for summary judgment, issuing jury instructions that raise a presumption against the spoliator, or the exclusion of evidence." *Id*.

## FACTUAL BACKGROUND REGARDING THE EVIDENCE

### I. The Evidence Was Highly Relevant to Plaintiffs' Claims and Simmonds' Defense

Defendant Simmonds has given numerous different and conflicting accounts of the events that took place when he shot D'Ettrick Griffin. In the most recent of those accounts—his deposition in this lawsuit—Simmonds states that the reason he shot and killed D'Ettrick Griffin was because his jacket was caught in the door of the moving car. Simmonds Dep. 18:4–9, 61:24–62:2.[1]

In the first statement of any kind, minutes after the shooting, a responding

---

[1] Exhibit 3 to Plaintiffs' Motion for Partial Summary Judgment.

officer asks Simmonds what happened. Simmonds' response is recorded on the officer's body worn camera: "I'm at gas station man, and the um, the guy jumped in the car. I tried to close the door and another person was inside there man, and I thought there was a gun." APD Body Worn Camera X81086620, at 01:34–01:50.[2] Simmonds did not mention that his foot was run over, that his jacket was trapped, or otherwise state that he at all feared injury from the car itself. When it became known that D'Ettrick was not armed (OPS File, at 3[3]), Simmonds' story changed.

Simmonds' second version of events was provided with his union representative present to a GBI investigator at the scene approximately two hours later. Simmonds told GBI Special Agent Jan Roulain that the car injured his foot so he banged on the window and then fired his gun twice. OPS File, at 4. Simmonds did not state to the GBI agent that his jacket was trapped in the door. *Id.*

Simmonds' third statement on the matter was given to APD internal investigator Arthur Nixon on May 14, 2019, with his attorney, Jackie Patterson present. Simmonds stated that the car "catch my foot." OPS File, at 155. Simmonds also stated for the first time that his shirt and jacket were caught in the

---

[2] Exhibit 7 to Plaintiffs' Motion for Partial Summary Judgment.
[3] Exhibit 1 to Plaintiffs' Motion for Partial Summary Judgment.

door. *Id.*

Simmonds' fourth account of the incident was provided in a deposition in a lawsuit brought by a bystander who was injured by the vehicle D'Ettrick was driving after he was killed. Simmonds was represented in the deposition by his attorney, Rory Starkey of Hilliard Starkey Law. This time Simmonds again stated that his jacket was stuck in the vehicle door. But he added that after he shot D'Ettrick, his jacket came free from the door, and he fell down into the roadway. Deposition of Oliver Simmonds in *Osborne v. City of Atlanta* ("Simmonds' Osborne Dep."), at 26:25–27:13 (Exhibit 1). Simmonds repeatedly reiterated that he fell down in the street, not on the gas station property:

> Q. So let me understand when you mean by you fell down, and I want to understand exactly where you were. So where exactly did you fall off of the car? Were you on the gas station property or in the roadway?
>
> A. In the road, on Whitehall Avenue.
>
> Q. Okay, so you fell off the car onto Whitehall Avenue; is that right?
>
> A. Yes, ma'am.
>
> Q. And when you say that you fell down, was that like on your hands and knees?
>
> A. Yes, ma'am. I know I used my hand to break my fall.
>
> Q. Did you fall on your knees as well?
>
> A. Yeah, on my – on my left knee.

7

> Q. Okay. So when you fell off the car you fell onto your left knee, and you used your hands, also, to break your fall; is that right?
>
> A. My left knee and my – and I said my left hand.
>
> Q. Okay, so let me just be clear. When you broke your fall, you broke your fall with your left hand and your left knee touching the ground; is that right? A. Yes, ma'am.

Simmonds' Osborne Dep. 27:22–28:21. In this deposition, Simmonds did not mention that his foot was run over or injured.

Finally, in Simmonds' deposition in this matter, still represented by counsel, Simmonds stated both that his jacket was caught in the vehicle door and his foot was run over:

> So at that point, the door closes. I'm not sure how it closed. And part of my jacket was stuck to the car. When I realized that he was about to turn to go on Whitehall and to increase speed, I drew my pistol and I fired while tugging onto my jacket. Then I got released from the car.
>
> My – in the process at some point the vehicle run over my foot. So when I – when I got released from the car, I fell onto the side of the street trying to call – get on my radio, trying to call dispatch to tell them exactly what happened. Then the car apparently crashes.

Simmonds Dep. 15:13–24.[4] Simmonds repeatedly testified that the reason he shot D'Ettrick was because his jacket was trapped in the car door. Simmonds Dep. 18:4–9, 61:24–62:2.

---

[4] Exhibit 3 to Plaintiffs' Motion for Partial Summary Judgment.

When shown the surveillance video of the incident, however, Simmonds' story changed. He stated that all of the operative events—the door closing on his jacket, his foot being run over, and him shooting at D'Ettrick twice occurred during a four-second span in which the vehicle is out of the camera frame but clearly on the gas station property. Simmonds Dep. 102:19–103:5. Simmonds also stated that he did not, in fact, fall immediately after firing and prior to the car crashing. Instead, he fell much later, simply due to the pain in his foot. Simmonds Dep. 99:7–25.

Finally, Simmonds expressly testified that his suit jacket was damaged and torn due to being stuck in the door of the moving car. Simmonds Dep. 59:11–19.

## II. Defendant Simmonds had a Duty to Preserve the Evidence

There is ample evidence that litigation was reasonably foreseeable, and Defendant Simmonds has admitted that it was. In an interrogatory response, Defendant Simmonds stated that on the night of the shooting he was aware that the incident would be the subject of criminal, civil, and administrative investigation. Defendant's Response to Plaintiffs' Second Interrogatories, at No. 3 (Exhibit 2). Simmonds further testified that he was aware evidence pertaining to the incident should be preserved:

> Q. As a police officer, you're aware that evidence pertaining to an incident that's under investigation needs to be carefully preserved;

9

right?

A. Yes.

Simmonds Dep. 61:20–23.

### III. Defendant Simmonds Did Not Preserve the Evidence

Plaintiffs requested that Simmonds produce the attire at issue for inspection at his deposition. *See* Notice of Deposition of Oliver Simmonds, at 6 (Exhibit 3). Simmonds did not do so and instead testified that he no longer had the suit. He explained that when he got home the night of the shooting, he simply threw the suit "in a corner" and then never saw it again. Simmonds Dep. 62:13–64:15. He simply does not know when or how the suit left the "corner" in which he placed it. *Id.*

### SANCTIONS ARE NOT ONLY APPROPRIATE BUT NECESSARY

Each of the applicable factors weighs in favor of imposing sanctions. There is no indication that any expert intends to testify that Simmonds' jacket was in fact trapped in the car door. This is likely because, as explained below, there is no independent evidence that the jacket in fact was trapped in the door, and there is voluminous evidence that it was not. Assuming no expert will be allowed to offer opinions that were not disclosed in discovery, that factor will not be an issue. Each of the other four factors weigh strongly in favor of imposing sanctions.

10

### I. Plaintiffs Were Prejudiced by the Destruction of Evidence

Unlike documentary evidence that may contain statements that can be further explained, rebutted, or disproven, this motion concerns one-of-a-kind physical evidence. The evidence would have essentially conclusively established whether Simmonds' testimony as to his justification for shooting D'Ettrick Griffin is accurate. The destruction of the evidence is highly prejudicial to Plaintiffs.

### II. The Prejudice Cannot Be Cured

As noted above, Simmonds testified that he fired his gun because his jacket was caught in the vehicle's door, pulling him into the street where there was oncoming traffic. Simmonds Dep. 18:4–9, 61:24–62:2. He testified that the jacket was torn as a result. Simmonds Dep. 59:11–18. As discussed below, all other evidence on the issue conflicts with Simmonds' testimony. By simply looking at the jacket, or photographs or video taken of the jacket during an examination of the jacket in discovery, the jury could have easily, conclusively resolved the factual dispute. There is no adequate cure for the prejudice caused by the destruction of such a crucial piece of tangible evidence.

### III. The Evidence Is Highly Important

Simmonds admits that if he had not chased after the car, he never would have been in danger. Simmonds Dep. 94:22–95:1. According to Defendant

11

Simmonds' testimony, an 18-year-old boy died because Simmonds chose to chase after the car and his jacket somehow became stuck in its door. That jacket was the single most important piece of evidence to Plaintiffs' claims and Simmonds' defense.

## IV.     Defendant Simmonds Acted in Bad Faith

It is clear that "the circumstances of the act . . . manifest bad faith." *Vick v. Tex. Emp't Com*, 514 F.2d 734, 737 (5th Cir. 1975).

### A.     Simmonds Had Motive and Opportunity to Destroy the Evidence

Simmonds had possession of the suit, in private, at his home, the night of the shooting. Simmonds Dep. 62:13–64:15. There is no dispute that he had the opportunity to destroy the evidence.

Similarly, it cannot be disputed that Simmonds had motive to destroy the evidence. In addition to this civil litigation, Defendant Simmonds has been charged with felony murder, among other crimes, for killing D'Ettrick. *See* Fulton County Superior Court, No. 22sc184891 Direct Indictment.[5] If convicted, Simmonds would face a minimum sentence of life imprisonment with the possibility of parole and a maximum sentence of death. O.C.G.A. § 16-5-1(e)(1). If there were physical evidence exclusively in Simmonds possession that

---

[5] Exhibit 10 to Plaintiffs' Motion for Partial Summary Judgment.

12

corroborated his testimony that his life was in danger because his jacket was closed in the car door, surely he would have been strongly motivated to preserve that evidence at virtually any cost. One would expect Simmonds to photograph the damage, videotape the damage, give the evidence to his attorneys, or place it in some highly secure location.

Alternatively, if Simmonds had exclusive possession of physical evidence disproving his only defense, he would be strongly motivated to destroy that evidence.

Tellingly, Simmonds chose not to preserve the evidence.

### B.     All Other Evidence Contradicts the Destroyed Evidence that Simmonds Claims Would Prove His Defense

All other relevant evidence in the case suggests that the destroyed evidence would have benefitted Plaintiffs' case and disproven Simmonds' defense. First, Simmonds' own testimony is not credible for two reasons: the photographs and video taken at the scene which clearly show that there is no damage to the suit. *See* GBI Photographs (Exhibit 4); APD Body Worn Camera X81086620, at 01:20–01:51.[6]

Simmonds conveniently testified that the "inside" of the suit was torn.

---

[6] Exhibit 7 to Plaintiffs' Motion for Partial Summary Judgment.

13

Simmonds Dep. 59:18–19. But it defies common sense to believe that the jacket was trapped in a car door so securely that Simmonds was dragged into the street and the "inside" was torn, but there was no visible sign whatsoever on the outside of the jacket.

Moreover, Simmonds was on the driver's side of the vehicle and fired through the driver's side window. OPS File, at 20. And the bullet hit D'Ettrick in the back and traveled towards his front. *See* Fulton County Medical Examiner Autopsy Report, at 3.[7] Simmonds held the gun in his right hand. Simmonds Dep. 18:16–19. According to Simmonds, though, it was the lefthand side of his suit that was trapped in the door. Simmonds Dep. 73:6–22. Simmonds gives the improbable, if not impossible, explanation that while the left side of his jacket was closed in the driver's door, he "fired up over [his] head" to accomplish the fatal gunshot. Simmonds Dep. 73:23–75:6.

Second, the APD's own internal investigation concluded that Simmonds' jacket was not trapped in the car door, that he was not dragged by the car, and that he did not fall down after shooting D'Ettrick. The APD's Office of Professional Standards concluded the Simmonds violated APD's rule requiring truthfulness by making these statements. OPS File, at 5.

---

[7] Exhibit 4 to Plaintiffs' Motion for Partial Summary Judgment.

Third, the shooting scene reconstructionist that Plaintiffs retained concluded that there was no evidence that Simmonds' jacket was in fact trapped in the door. Roder Dep. 223:22–224:2 (Exhibit 5). He further concluded that the muzzle of Simmonds handgun was approximately 17 inches from the car window and Simmonds' center of mass was four feet away. Roder Dep. 159:6–21.

Fourth, eyewitness statements indicate that Simmonds' jacket was not trapped in the door. Kajara Anderson stated that she watched Defendant Simmonds run alongside the car. OPS File, 208. Likewise, Nidia Farley stated that Simmonds was running after the car, not attached to it. OPS File, 188–190.

### C. A Police Officer Who Was Represented at All Times Should be Held to the Highest of Standards in Preserving Evidence

Sanction would be appropriate against any party in these circumstances. If any "experienced" party should be held to a "higher standard" regarding the preservation of evidence, however, it must include police officers who are professionally trained in the investigation of crime scenes and the handling of evidence. *See* APD SOP 3081 (Exhibit 6). As noted above, Simmonds admits that as a police officer he was aware of the importance of preserving evidence.

Additionally, Defendant Simmonds had professional representation to advise him, at the scene, almost immediately after the shooting. The City of Atlanta admits in testimony that this immediate representation is a privilege afforded to

15

police officers that an ordinary citizen suspected of shooting someone would not receive. Baldini Dep. 99:11–100:7.[8] Thereafter, Simmonds was represented by one or more attorneys in both criminal and civil proceedings at all times until long after he destroyed the evidence.

Simmonds' own knowledge and training and immediate and continual professional counsel during all relevant times further shows that his destruction of evidence was inexcusable and "the circumstances of the act . . . manifest bad faith." *Vick v. Tex. Emp't Com*, 514 F.2d 734, 737 (5th Cir. 1975).

### **PLAINTIFF'S REQUESTED SANCTIONS**

Given the factors discussed above—particularly the importance of the evidence and the bad faith circumstances of its destruction—severe sanctions are appropriate. Plaintiffs ask that the Court enter summary judgment in their favor on the issues of whether Simmonds violated D'Ettrick Griffin's fourth amendment rights and whether Simmonds committed assault and battery under state law.

Alternatively, Plaintiffs ask that the Court give the jury an adverse inference instruction, and that the Court itself draw an adverse inference for purposes of Plaintiffs' separate Motion for Partial Summary Judgment against Defendant Simmonds.

---

[8] Exhibit 6 to Plaintiffs' Motion for Partial Summary Judgment.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask that the Court order Plaintiffs' requested sanctions and any other relief the Court deems appropriate for Defendant Simmonds' spoliation of evidence.

DATED:  October 25, 2023.

/s/Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783
Matthew S. Harman
Georgia Bar No: 327169

**HARMAN LAW FIRM LLC**
3575 Piedmont Road, NE
Bldg 15, Suite 1040
Atlanta, GA 30505
Telephone:  (404) 554-0777
Facsimile:  (404) 424-9370
Email:  mharman@harmanlaw.com
         efredrickson@harmanlaw.com

Alex R. Merritt
Georgia Bar No. 143308
DeWoskin Law Firm, LLC
535 North McDonough Street
Decatur, Georgia 30030
alex@atlantatrial.com
(404) 987-0026

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1B.  This pleading has been prepared in Times New Roman font, 14 point.

## CERTIFICATE OF SERVICE

I certify that today I served a true and correct copy of the following document using the Court's CM/ECF system, which will automatically serve a copy on all counsel of record, and on Defendant Oliver Simmonds via first class mail addressed as follows:

Oliver Simmonds<br>
397 Whitney Lane<br>
McDonough, GA  30253

**DATED**:  October 25, 2023.

/s/Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783